**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| GREGORY A. GRIFFIN, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | )  1:15CV694 |
| | ) |
| GEORGE SOLOMON, | ) |
| | ) |
| Respondent. | ) |

**MEMORANDUM OPINION AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (the "Petition"). (Docket Entry 1.) Respondent has moved for dismissal on grounds of untimeliness or, alternatively, for clarification of Petitioner's claims. (Docket Entry 3; see also Docket Entry 4 (Supporting Brief).) For the reasons that follow, the Court should deny Respondent's Motion to Dismiss and should deny as moot his alternative Motion for More Definite Statement.

### I. Background

On May 9, 2013, a jury in the Superior Court of Cabarrus County found Petitioner guilty of the offenses of breaking and entering and of possessing burglary tools (both as an habitual felon), whereupon the Superior Court imposed two, concurrent prison sentences of 146 to 185 months. (See Docket Entry 1, ¶¶ 1-6; Docket Entry 4-5 at 64, 70, 74-77.)[1] Petitioner appealed to the

---

[1] The Petition consists of 10 pages of a standard form, followed by 46 pages of materials from Petitioner's underlying state criminal case(s) (see Docket Entry 1), with additional such documents appended as Exhibit A (see Docket
(continued...)

North Carolina Court of Appeals and received appointed appellate counsel. (See Docket Entry 4-5 at 83-85.) Through that counsel, Petitioner filed a brief with the North Carolina Court of Appeals raising three issues, the first two of which concerned alleged, non-constitutional errors (i.e., admission of irrelevant evidence and admission of improper opinion evidence) (see Docket Entry 4-6 at 16-37) and the third of which raised an alleged, federal and state constitutional error (i.e., admission of unreliable identification evidence from or tainted by an inherently suggestive "show-up") (see id. at 38-43). The North Carolina Court of Appeals affirmed. North Carolina v. Griffin, No. COA13-1093, 233 N.C. App. 239 (table), 2014 WL 1384371 (Apr. 1, 2014) (unpublished).[2]

Petitioner (acting pro se) then forwarded to the Supreme Court of North Carolina a "Notice of Appeal" (dated as signed on April 8, 2014, and stamped "Filed" by the Clerk of the Supreme Court of North Carolina on April 14, 2014), stating that Petitioner gave

---

[1](...continued)
Entry 1-1) and Exhibit B (see Docket Entry 1-2). This Memorandum Opinion cites to the standard form portion of the Petition by paragraph and to the remainder of the Petition, as well as Exhibits A and B, by the page number in the footer appended to those materials at the time of their docketing in the CM/ECF system. Respondent also attached to his Supporting Brief documents from Petitioner's state criminal proceedings (see Docket Entries 4-2 to 4-21), the authenticity of which Petitioner has not contested (see Docket Entries 6, 7). This Memorandum Opinion cites to those items by the page number in their CM/ECF footers. Hand-written portions of Petitioner's filings frequently feature all capital letters, but (for ease of reading) this Memorandum Opinion employs standard capitalization conventions when quoting such filings.

[2] Prior to the above-referenced ruling by the North Carolina Court of Appeals, Petitioner submitted numerous pro se motions, all of which the North Carolina Court of Appeals rejected. (See Docket Entry 4-8 at 3-4.) Petitioner then filed with the Supreme Court of North Carolina a "Petition for Discretionary Review under N.C.G.S. 7A-31" as to various of those motions. (Docket Entry 4-9 at 4-9.) The Supreme Court of North Carolina denied that petition on April 10, 2014. North Carolina v. Griffin, 367 N.C. 498, 757 S.E.2d 899 (2014).

"notice of appeal to the Supreme Court of North Carolina from the decision of the North Carolina Court of Appeals that was filed April 1st 2014 Matter COA13-1093." (Docket Entry 4-14 at 9; see also Docket Entry 4-16 at 2 (setting forth on "Supreme Court of North Carolina Docket Sheet [for] State v. Gregory Austin Griffin" a "Docket Date" of April 14, 2014, but a "Date Filed" for "MOTION FOR NOTICE OF APPEAL" of April 16, 2014).) The Supreme Court of North Carolina dismissed that Notice of Appeal on June 11, 2014. North Carolina v. Griffin, 367 N.C. 506, 759 S.E.2d 101 (2014).[3]

On May 29, 2015, the Superior Court of Cabarrus County stamped as "FILED" Petitioner's Motion for Appropriate Relief ("MAR"). (Docket Entry 4-17 at 2.) That court denied and dismissed that MAR on June 2, 2015. (Docket Entry 4-18 at 2-3.) On August 6, 2015, the North Carolina Court of Appeals denied Petitioner's request for certiorari review of the denial/dismissal of his MAR. (Docket Entry 4-21 at 2.) Petitioner subsequently instituted this action via his Petition dated as signed and tendered to prison officials for mailing on August 11, 2015. (Docket Entry 1, Decl. ¶.) Respondent thereafter filed the instant Motion to Dismiss or, in the Alternative, Motion for More Definite Statement (Docket Entry 3) and Petitioner responded (Docket Entries 6, 7).

---

[3] Consistent with the filing date and document description listed on the Supreme Court of North Carolina Docket Sheet, the above-cited Order refers to "the motion filed on the 16th of April 2014 by [Petitioner] for Notice of Appeal." Griffin, 367 N.C. at 506, 759 S.E.2d at 101. Petitioner, however, clearly styled the document at issue not as a motion, but as a "Notice of Appeal." (Docket Entry 4-14 at 9.)

-3-

## II. Grounds for Relief

The Petition presents <u>four</u> grounds for relief. (Docket Entry 1, ¶ 12.) The first alleges that Petitioner's "conviction was obtained in violation of due process of law." (<u>Id.</u>, ¶ 12(Ground One)(a).) The second asserts that Petitioner suffered a violation of his "due process equal protection right." (<u>Id.</u>, ¶ 12(Ground Two).) The third states that Petitioner's conviction arose from an "unconstitutional search and seizure." (<u>Id.</u>, ¶ 12(Ground Three).) The fourth contends that the "State with[held] favorable evidence." (<u>Id.</u>, ¶ 12(Ground Four).)

In the portion of the Petition calling for "[s]upporting facts" for each ground for relief, Petitioner simply referred the Court to his attached MAR. (<u>See</u> <u>id.</u>, ¶ 12(Ground One)(a), (Ground Two)(a), (Ground Three)(a), & (Ground Four)(a).) However, Petitioner's Amendment Response to State's Answer includes detailed factual allegations as to the four grounds set forth in the Petition. (<u>See</u> Docket Entry 7 at 2-7.) That filing also adds a new "Ground V: Violation of Petitioners [sic] . . . right to a [sic] impartial jury" (<u>id.</u> at 7), with supporting factual allegations (<u>see</u> <u>id.</u> at 7-8).[4] Petitioner's Amendment Response to

---

[4] The Court stamped Petitioner's Amendment Response to State's Answer as filed on October 19, 2015 (<u>see</u> Docket Entry 7 at 1), less than 21 days after Respondent filed his instant Motion to Dismiss (on October 2, 2015) (<u>see</u> Docket Entry 3). As a result, Petitioner properly added Ground Five as a matter of course. <u>See</u> Fed. R. Civ. P. 15(a)(1); <u>see also</u> 28 U.S.C. § 2242 ("[A habeas petition] may be amended or supplemented as provided in the rules of procedure applicable to civil actions."). However, to the extent Petitioner's Amendment Response to State's Answer "request[s] that the Court allow in addition . . . that the issues and grounds for relief in the M.A.R. on p. 17-18 under (c)X and p. 31-38 noted under (6) and (6)(B) that's attached to/with [the Petition] be included and given consideration as issues raised and presented" (Docket Entry (continued...)

State's Answer thus moots Respondent's instant, alternative Motion for More Definite Statement.

### III. Discussion

Respondent's instant Motion to Dismiss argues that Petitioner filed the Petition outside the one-year limitation period codified at 28 U.S.C. § 2244(d)(1). (See Docket Entry 3 at 1.) In order to assess Respondent's statute of limitation argument, the Court first must determine when Petitioner's one-year period to file his Petition commenced. In that regard, the United States Court of Appeals for the Fourth Circuit has explained that:

> Under § 2244(d)(1)(A)-(D), the one-year limitation period <u>begins to run from</u> the latest of several potential starting dates:
>
> (A) <u>the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review</u>;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the

---

[4](...continued)
7 at 8-9), the Court should deem such matters inadequately pleaded, see, e.g., Adams v. Armontrout, 897 F.2d 332, 333 (8th Cir. 1990) (holding that Rule 2(c) of the Rules Governing Section 2254 Cases bars a petitioner from simply incorporating allegations made in related state proceedings). Finally, in his Amendment Response to State's Answer, Petitioner has requested "that counsel be assigned to assist [him] and an evidentiary hearing." (Docket Entry 7 at 9.) Appointment of counsel in habeas cases requires a showing of exceptional circumstances, see Chapman v. Herron, No. 1:11CV194, 2012 WL 3151007, at *1-2 (M.D.N.C. Aug. 2, 2012) (unpublished), a standard Petitioner has not even attempted to meet (see Docket Entry 7 at 9). Nor does the record yet warrant the setting of an evidentiary hearing; rather, if the Court denies the instant Motion to Dismiss, Respondent should have an opportunity to answer and/or otherwise respond on the merits, see Chapman, 2012 WL 3151007, at *2, and the Court thereafter can decide whether to hold an evidentiary hearing, see Rule 8(a), Rules Governing Sect. 2254 Cases.

>     right has been newly recognized by the Supreme Court and
>     made retroactively applicable to cases on collateral
>     review; or
>
>     (D) the date on which the factual predicate of the claim
>     or claims presented could have been discovered through
>     the exercise of due diligence.

Green v. Johnson, 515 F.3d 290, 303-04 (4th Cir. 2008) (emphasis added).

Under subparagraph (A), Petitioner's convictions became final on or about September 9, 2014 (i.e., 90 days after the Supreme Court of North Carolina dismissed his Notice of Appeal, Griffin, 367 N.C. at 506, 759 S.E.2d at 101). See Clay v. United States, 537 U.S. 522, 527 (2003) (holding that "[f]inality attaches when th[e United States Supreme] Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires"); see also Sup. Ct. R. 13.1 (allowing 90 days to seek certiorari after ruling by highest state appellate court). Because (as documented in Section I) Petitioner filed his Petition in this Court less than a year later, i.e., on August 11, 2014 (when he submitted the Petition to prison officials for mailing, see Rule 3(d) of the Rules Governing Sect. 2254 Cases), his Petition qualifies as timely under Section 2244(d)(1).

Respondent has disputed the foregoing calculations by arguing that, following the affirmance of Petitioner's convictions by the North Carolina Court of Appeals on April 1, 2014, "Petitioner failed to keep his direct appeal alive, and his case became final on 6 May 2014 when his time to [file a Petition for Discretionary

-6-

Review or a proper Notice of Appeal] expired." (Docket Entry 4 at 6; see also id. at 5 n.1 ("The [North Carolina] Court of Appeals' mandate issues twenty days after the filing of an opinion, and thereafter, a party has fifteen days to seek review in the North Carolina Supreme Court." (internal parenthetical omitted) (citing Saguilar v. Harkleroad, 348 F. Supp. 2d 595, 598-601 (M.D.N.C. 2004), appeal dismissed, 145 F. App'x 444 (4th Cir. 2005))), 10-11 ("[Petitioner's] case, therefore, became final on 6 May 2014 – thirty-five days after the [North Carolina] Court of Appeals' decision. Thereafter, more than one year elapsed before Petitioner filed his MAR [in] state court on 29 May 2015. Consequently, by the time he filed his MAR, his statute of limitations under [Section 2244(d)(1)] had already expired, and 'once the one-year statute of limitation had fully expired, no subsequent [state collateral] motion or petition could revive it.'" (internal brackets and ellipsis omitted) (quoting Hairston v. Beck, 345 F. Supp. 2d 535, 538 (M.D.N.C. 2004))).) Specifically, Respondent has reasoned that, following the denial of relief on direct appeal by the North Carolina Court of Appeals, "Petitioner had thirty-five days – until 6 May 2014 – to seek review in the North Carolina Supreme Court by filing (a) a petition for discretionary review, (b) a notice of appeal based upon a dissenting opinion, and/or (c) a notice of appeal based upon a substantial constitutional question. Petitioner, however, did none of these." (Id. at 5 (internal citations, footnote, parenthetical abbreviation, and quotation marks omitted).)

Respondent correctly has described the three courses by which a direct appeal generally may proceed from the North Carolina Court of Appeals to the Supreme Court of North Carolina. See N.C. Gen. Stat. §§ 7A-30 ("Except as provided in G.S. 7A-28 [concerning MARs], an appeal lies of right to the Supreme Court from any decision of the Court of Appeals rendered in a case: (1) Which directly involves a substantial question arising under the Constitution of the United States or of this State, or (2) In which there is a dissent."), 7A-31(a) ("[T]he Supreme Court may, in its discretion, on motion of any party to the cause or on its own motion, certify the cause for review by the Supreme Court, . . . after it has been determined by the Court of Appeals."). Further, Respondent properly has observed that, upon the denial of Petitioner's direct appeal by the North Carolina Court of Appeals:

1) Petitioner did <u>not</u> file a Petition for Discretionary Review (despite clearly knowing how to do so (<u>see</u> Docket Entry 4-9 at 4-9)), but instead explicitly filed a "Notice of Appeal" (<u>see</u> Docket Entry 4-14 at 9-10); and

2) that "Notice of Appeal" filed by Petitioner could <u>not</u> have continued the direct appeal process via the statutory provision authorizing appeal of right to the Supreme Court of North Carolina based upon lack of unanimity at the North Carolina Court of Appeals, because no member of the three-judge panel who heard his direct appeal dissented, <u>see</u> <u>Griffin</u>, 2014 WL 1384371, at *1 (identifying "STEPHENS, Judge" as author), *10 ("Judges BRYANT and DILLON concur.").

The undersigned Magistrate Judge, however, cannot agree that, under the particular facts of this case, the Notice of Appeal filed by Petitioner failed, as a matter of law, to keep alive his direct appeal via the alternative statutory provision permitting appeal "of right to the Supreme Court [of North Carolina] from any decision of the [North Carolina] Court of Appeals rendered in a case . . . [w]hich directly involves a substantial question arising under the Constitution of the United States or of th[e] State [of North Carolina]," N.C. Gen. Stat. § 7A-30. In that regard, Respondent mistakenly has suggested that the Notice of Appeal at issue, beyond lacking express language "alleg[ing] the involvement of any constitutional question, let alone a substantial one" (Docket Entry 4 at 9), also could not reasonably have been understood to impliedly assert that such a question existed, because "*no* constitutional question was presented to the North Carolina Court of Appeals" (id. at 9 n.7 (italics in original)).

As noted in Section I, contrary to that position, Petitioner's brief before the North Carolina Court of Appeals explicitly presented for review the question of whether the admission of certain identification testimony violated his federal and state constitutional due process rights. (See Docket Entry 4-6 at 38-39 ("III. THE TRIAL COURT COMMITTED PLAIN ERROR BY ADMITTING THE IDENTIFICATION OF [PETITIONER] BY TWO BI-LO EMPLOYEES BECAUSE THE IDENTIFICATION RESULTED FROM AN INHERENTLY SUGGESTIVE SHOW-UP. Standard of review: This court reviews evidentiary errors or **constitutional** errors to which the defendant did not object at

-9-

trial for plain error . . . . Because the show-up was inherently suggestive, both witness's out-of-court identification and in-court identification should have been suppressed. Even in the absence of an objection or motion to suppress by trial counsel, the court should have intervened to suppress this testimony. . . . **The use of unreliable identification testimony offends due process. U.S. Const., Amend. XIV; N.C. Const., Art. I, §§ 19, 23, 24.** If a pre-trial identification procedure was so unfairly suggestive as to create a substantial likelihood of misidentification, the evidence of the identification must be suppressed, as well as any in-court identification testimony derived therefrom. *Manson v. Braithwaite*, **432 U.S. 98 (1977);** *Neil v. Biggers*, **409 U.S. 188 (1972);** *State v. Pigott*, 320 N.C. 96, 357 S.E.2d 631 (1987)." (bolding added) (some internal parallel citations omitted)).) Indeed, the State's brief to the North Carolina Court of Appeals clearly manifested its understanding that Petitioner had raised a <u>constitutional</u> issue on direct appeal. (See Docket Entry 4-7 at 31 ("Now [Petitioner] claims plain error and challenges the show-up identification on **constitutional** grounds claiming that the show-up procedure used in this case was inherently suggestive." (bolding added)).)[5]

---

[5] Moreover, the State devoted more than nine pages to that constitutional question (out of 29 pages of argument in the brief) (<u>see</u> Docket Entry 4-7 at 11-40), indicating that the State did not view the matter as trivial. Nor did the North Carolina Court of Appeals give the issue short-shrift; instead, despite noting that the plain error standard applied, <u>Griffin</u>, 2014 WL 1384371, at *8, the decision bypassed reliance on the unique elements of that test and effectively reviewed this constitutional question de novo, "conclud[ing] that the show-up procedure here was unduly suggestive," <u>id.</u>, but that, "just as in [<u>North Carolina v.] Rawls</u>[, 207 N.C. App. 415, 700 S.E.2d 112 (2010)], '. . . there was no substantial likelihood of irreparable misidentification,'" <u>Griffin</u>, 2014 WL 1384371, at *9 (quoting <u>Rawls</u>, 207 N.C. App. at 424, 700 S.E.2d at 118).

Given the foregoing context, the Supreme Court of North Carolina thus readily could have concluded that the Notice of Appeal at issue claimed entitlement to review of the sole constitutional question presented to the North Carolina Court of Appeals, despite the absence of express allegations in that Notice of Appeal about the nature of the constitutional question that Petitioner wanted reviewed, as required by a procedural rule, see N.C. App. R. 14(b)(2) ("In an appeal which is asserted by the appellant to involve a substantial constitutional question, the notice of appeal . . . shall state the issue or issues which are the basis of the constitutional claim and which are to be presented to the Supreme Court for review; shall specify the articles and sections of the Constitution asserted to be involved; shall state with particularity how appellant's rights thereunder have been violated; and shall affirmatively state that the constitutional issue was timely raised (in the trial tribunal if it could have been, in the Court of Appeals if not) and either not determined or determined erroneously."). The Supreme Court of North Carolina ultimately dismissed the Notice of Appeal, but without explaining whether that dismissal stemmed from Petitioner's non-compliance with the technical requirements of North Carolina Appellate Rule 14(b)(2) or occurred because the Supreme Court of North Carolina deemed his constitutional challenge to the show-up-related and show-up-tainted identification evidence insubstantial. See Griffin, 367 N.C. at 506, 759 S.E.2d at 101.

-11-

As the latter scenario remains a distinct possibility, the Court should not accept Respondent's contention that the Notice of Appeal at issue failed to extend the life of Petitioner's direct appeal because "jurisdiction never vested in the North Carolina Supreme Court" (Docket Entry 4 at 9). (See id. at 8 n.5 ("If Petitioner had *alleged* a substantial constitutional question and the court still dismissed the appeal, then he arguably would have kept his direct review alive since the court at least would have had to make a substantive decision as [to] the *existence* of a substantial constitutional question." (italics in original)).)[6]

## IV. Conclusion

Respondent has not demonstrated that the statute of limitations in Section 2244(d)(1) bars Petitioner's claims and Petitioner's Amendment Response to State's Answer provides factual allegations that render moot Respondent's alternative request for clarification of Petitioner's claims.

---

[6] At points, Respondent's Supporting Brief appears to intimate that North Carolina Appellate Rule 14(b)(2) establishes "jurisdictional" requirements (such that the Supreme Court of North Carolina never could have reached the substantiality question in regards to Petitioner's Notice of Appeal). (See, e.g., Docket Entry 4 at 10 ("[T]here are practical considerations [that weigh against] permitting defective and jurisdictionally deficient appeals to delay finality and the accrual of the statute of limitations.").) Independent research has revealed no North Carolina cases taking that view. Additionally, the United States Supreme Court "ha[s] tried in recent cases to bring some discipline to the use of the term 'jurisdiction.'" Sebelius v. Auburn Reg'l Med. Ctr., ___ U.S. ___, ___, 133 S. Ct. 817, 824 (2013) (some internal quotation marks omitted). "Among the types of rules that should not be described as jurisdictional are what [the United States Supreme Court] ha[s] called 'claims-processing rules.' These are rules that seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times." Henderson ex rel. Henderson v. Shinseki, 562 U.S. 428, 435 (2011). North Carolina Appellate Rule 14(b)(2) appears to meet that description of a (presumptively, at least) non-jurisdictional, claims-processing rule.

**IT IS THEREFORE RECOMMENDED** that Respondent's Motion to Dismiss or, in the Alternative, Motion for More Definite Statement (Docket Entry 3) be denied in part and denied as moot in part.

**IT IS FURTHER RECOMMENDED** that Respondent be ordered to answer and/or otherwise respond on the merits to Grounds One through Five of the Petition (Docket Entry 1), as amended by Petitioner's Amendment Response to State's Answer (Docket Entry 7).

                              /s/ L. Patrick Auld
                            **L. Patrick Auld**
                   **United States Magistrate Judge**
August 2, 2016